Merrimack
No. 7460

BERNARD W. CORSON

v.

MELDRIM L. THOMSON, JR., & a.

June 8, 1976

*Nixon, Christy, Tessier & Peltonen* and *Randolph Reis* (law student, pursuant to rule 23) *(Mr. David L. Nixon* and *Mr. Reis* orally) for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Kohls* and *Eugene M. Van Loan III (Mr. Van Loan* orally) for the defendants Simmons, Clark, Lynch, Gray, Hayes, Doherty, Thornton, and Wulff.

*David H. Souter,* attorney general, and *Richard V. Wiebusch,* assistant attorney general *(Mr. Wiebusch* orally), for the defendant New Hampshire Fish and Game Commission.

*David A. Brock* for Meldrim L. Thomson, Jr., waived brief and oral argument.

Arthur W. Strathern and *Richard F. Upton (Mr. Upton* orally), pro se.

PER CURIAM. The issues involved in this transfer are by what authority and in what manner or procedure may the director of the department of fish and game be removed from office and whether it was error for the lower court to dismiss the Governor as a party to the action prior to an evidentiary hearing. Pending resolution of these questions by this court, the defendants were enjoined from taking any action adverse to the tenure of the plaintiff or from interfering with his statutory duties as director. The issues were reserved and transferred by *Batchelder,* J.

Plaintiff is presently the director of the New Hampshire Fish and Game Department, and has been an employee of that department since 1947. On or about January 5, 1976, and again on January 14, 1976, plaintiff alleges defendants Simmons and Clark demanded that he resign his position as director, stating that they spoke on behalf of a number of members of the fish and game commission. At its meeting of February 19, 1975, the fish and game commission adopted the following regulation: "No motion respecting the tenure of office of the Director shall be in order unless the subject matter expressly appears on the agenda prior to the meeting, and no final action shall be taken on such a motion until there has been written notice given to the Director specifying the complaints against him and he has been given reasonable opportunity to hear the evidence against him and present his defense to the Commission at a hearing which shall be public if desired by him." On February 12, 1976, the defendants submitted a formal resignation proposal to the plaintiff.

At its meeting on March 4, 1976, the fish and game commission adopted a motion to schedule a special meeting of the commission for March 29, 1976, for the express purpose of considering motions respecting the tenure of the plaintiff. It is plaintiff's contention that the fish and game commission has no authority or jurisdiction relative to the tenure of the director, as that authority and jurisdiction resides in the Governor and Council pursuant to RSA 4:1.

To resolve the question of the source of the authority by which the director of the department of fish and game may be removed from office necessitates a close scrutiny of the legislative history of the statutes which touch upon that subject. The position of the director of the fish and game department was first established in chapter 123 of the Session Laws of 1935. In defining the extent of the director's powers and duties, it was stated, "He shall serve for an indefinite term, at the pleasure of the commission." Laws 1935, 123:8.

In 1947, due to a controversy between the Governor and the then director of the fish and game commission, Senate bill 33 was introduced. That bill concerned only the removal of the director of the fish and game commission and initially provided for thirty-days written notice to the director of the reasons for removal and for a public hearing before the fish and game commission. Removal was to be by vote of a majority of the commission.

N.H.S. Jour. 248 (1947).

Senate bill 33 was then amended by the house to include the Governor and Council in the removal process. The amended bill included provisions for a public hearing to be held jointly before the Governor and Council and members of the fish and game commission. Removal was to be by vote of a majority of that body present at the hearing. N.H.H.R. Jour. 908 (1947). The senate concurred in the adoption of this amendment by the house. N.H.S. Jour. 365 (1947). This bill was again amended to include thirty-days notice (N.H.S. Jour. 394-95 (1947)), and then adopted. N.H.S. Jour. 439 (1947).

Within two weeks after the adoption of Senate bill 33, the bill was recalled from the Governor and recommitted to the committee of conference, which recommended that the senate and house adopt certain amendments which would extend the removal provision to other department heads in addition to the director of the fish and game department as well as to change the removal procedures. Those amendments read in pertinent part, "No commissioner, director, superintendent or other executive head of a state department, agency or institution appointed by a state board, commission or trustees of a state institution, whose tenure of office is indeterminate, shall be discharged or removed except by the Governor and Council for malfeasance, misfeasance, or inefficiency in office, or incapacity or unfitness to perform his duties, or for the good of the department, agency or institution. The attorney-general, or the board, commission or trustees which appointed any such public official may petition the Governor and Council for his removal, setting forth the grounds or reasons therefor." N.H.S. Jour. 490 (1947). The amendments were passed, and the bill adopted as amended. N.H.S. Jour. 549 (1947); N.H.H.R. Jour. 1321 (1947).

It is undisputed that with the passage of this bill the language "at the pleasure of the commission" was impliedly repealed from what is now RSA 206:8 (Supp. 1975) and that these words were no longer part of the statute even though they continued to appear in the statute book. As these words were repealed in 1947, they would have to be specifically reenacted by a vote of the legislature in order to give them legal effect.

In 1950, the commission which had been appointed to study the reorganization of the State government made its report and recommended that no changes be made in reorganization of the

fish and game commission. *See* The New Hampshire Reorganization Commission, The Reorganization of State Administrative Agencies 69-70, 81 (1950).

The commission in considering the duties and powers of the Governor and Council recommended that certain of their functions be limited but that the function of "removal of certain executive officers" be retained. *Id.* at 28. Laws of 1950, ch. 5, known as the Reorganization Act, in part 25, section 3 enlarged the number of officers whose removal was vested in the Governor and Council and read as follows: "Except as otherwise specifically provided, no official of the state outside of the state classified service shall be discharged or removed except by the governor and council for malfeasance, misfeasance, or inefficiency in office, or incapacity or unfitness to perform his duties, or for the good of the department, agency or institution to which he is assigned. The attorney-general, or the appointing authority of such official may petition the governor and council for his removal, setting forth the grounds and reasons therefor. The governor and council shall hold a public hearing upon such petition, giving due notice thereof to such official not less than thirty days before the hearing, and shall, if they find, upon due hearing, good cause for removal of such official, order his removal from office." Laws 1950, ch. 5, pt. 25, § 3. This law was enacted as what is presently RSA 4:1. The usual function of a saving clause is not to create something but to preserve something from immediate interference. *Knickerbocker Ice Co. v. Stewart,* 253 U. S. 149, 162 (1920); 73 Am. Jur. 2d *Statutes* § 406 (1974). The Reorganization Act of 1950 (Laws 1950, ch. 5, pt. 6, §§ 19, 23) specifically assigned to certain designated officials the power to remove named unclassified State officers subject to the approval of the Governor and Council. Hence the words "except as otherwise provided" were intended at least to exempt this procedure from the "General Provisions" of Laws 1950, ch. 5, pt. 25, § 3 *now* RSA 4:1 which provided a mechanism for removal by the Governor and Council alone. We cannot deduce from the use of those words a legislative intent to reinstate the previously abrogated power of the fish and game commission to remove its director.

The only reference to the fish and game commission in the Reorganization Act appears in part 24 entitled, "State Insurance and Officials' Bonds", and under the further subheading, "Officials' Bonds." Section 6 of part 24 eliminated the bonding requirement of all State officials except as specifically designated by

the constitution or as otherwise provided by law. There followed several sections repealing the bonding requirement of certain specific officials including section 13 entitled, "Bond; Fish and Game", which read in pertinent part as follows: "Amend section 8 of chapter 240 of the Revised Laws by striking out the words beginning on line 14 'he shall execute and file with the secretary a bond to the state in the sum of ten thousand dollars for the faithful performance of his duties' so that said section as amended shall read as follows . . . ." Section 8 was then copied as it had appeared in the statute book eliminating the bonding requirement but failing to eliminate the language that the director "shall serve at the pleasure of the commission" which had been repealed in 1947. It is defendant's contention that the repetition of these words in 1950 was sufficient to reenact and give effect to the language previously repealed and thus create a specific provision relating to the director so as to bring it within the meaning of the "Except as otherwise specifically provided" clause of what is now RSA 4:1.

As the amendment in part 24, section 13 was specifically directed to removal of the bonding requirement, the minds of the legislators were not brought to bear on the question of the reinsertion of the removal provision. The sole stated purpose of the amendment was to remove the bonding requirement. The removal of the director was in no way germane to the articulated purpose of the amendment. Without specific reenactment, the repetition of the language concerning removal repealed by implication in 1947 must be regarded as mere inadvertence. "Any inaccuracies in the restatement of language . . . would come to no more than clerical error resulting from changed conditions," and would not "operate to restore language previously altered by amendment . . . ." Opinion of the Justices, 115 N.H. 104, 107, 333 A.2d 714, 717 (1975); see City of Los Angeles v. Lelande, 11 Cal. App. 302, 306-07, 104 P. 717, 719 (1909); State v. Holt, 121 Mont. 459, 469, 194 P.2d 651, 657 (1948); International Minerals &c. Corp. v. Bledsoe, 126 Ga. App. 243, 248, 190 S.E.2d 572, 575-76 (1972).

As stated in Sutherland Statutory Construction, "Any errors in reciting the original act or section will be disregarded, as the recital of the original act or section is surplusage." 1A A. Sutherland, Statutes and Statutory Construction § 22.28 (C. Sands 4th ed. 1972). As the legislature specified that the section was to be amended so as to remove the bonding requirement, only that por-

tion of the statute as amended is effective, and the repetition of repealed language was inadvertent and ineffectual. Although the language granting removal power to the commission continued to appear in the published statutes it had no legal effect because it was not reenacted, just as the parties agree it had no legal effect in the period 1947-1950 even though it appeared in the statute book. As the 1947 enactment originally was specifically designed to govern the removal of the director of the fish and game department, we cannot attribute to the legislature an intention to change the removal procedure three years later without specific reference in the amending language to such change, particularly in light of this legislative history.

This reasoning applies with equal force to the subsequent amendments to RSA 206:8. Although the language that the director shall serve at the pleasure of the commission continued to appear in the statute, the amendments were concerned only with the annual salary for the director and the insertion of "wildlife resources and marine species" respectively.

Defendants' argument that proposed amendments to the section which failed to be enacted are indicative of the legislative intent that the director should be removed by the fish and game commission is not persuasive. "The legislature expresses its will by enacting laws, not by failing to do so." *Merrill v. Manchester,* 114 N.H. 722, 728, 332 A.2d 378, 382 (1974); *see United States v. Price,* 361 U.S. 304, 310-12 (1960).

Defendants further argue that the actions of the 1955 revision commission serve to indicate the legislative intent that the power of removal of the director shall be vested in the commission. Since that provision was not reenacted after its repeal in 1947, for the revision commission to amend the language of the statute to grant such power to the fish and game commission would have been a substantive change in the statute. However, the revision commission itself specifically articulated that, "The revision is not intended to change the meaning of the law as it existed on December 31, 1954." Report of the Commission for Revision of the Laws of New Hampshire to the General Court, 1955 Session iii (1955). Again, inclusion of the language "to serve at the pleasure of the commission" by the revision commission in RSA 206:8 was inadvertent and had no legal effect. As the legislature has never specifically reenacted that provision, the power remains vested in the Governor and Council according to the terms of RSA 4:1.

The plaintiff's petition requested that in a hearing, if any, be-

fore the Governor and Council regarding his removal, the Governor be disqualified in view of "manifest and recorded, although groundless bias against the plaintiff . . . ." The motion by the Governor that the petition be dismissed as to him was properly granted by the superior court. The fish and game commission has not voted to petition the Governor and Council for the removal of the plaintiff, and the Governor has not been put in the position of making the determination of whether or not he should recuse himself. *Moses v. Julian*, 45 N.H. 52 (1863). Any action by the court, under these circumstances would be unwarranted. K. Davis, Administrative Law Text ch. 21 (3d ed. 1972); 2 Am. Jur. 2d *Administrative Law* § 583 (1962); L. Jaffe, Judicial Control of Administrative Action ch. 10 (1965).

*Remanded.*

KENISON, C.J., (as a former member of the Revision Commission for the Revised Statutes Annotated (1st ed. 1955); see vol. 1 RSA (Replacement ed. 1970, Preface V-VI; Laws 1953, ch. 221)) did not participate in the consideration and decision of this case for reasons which might be thought to disqualify him. *See Opinion of the Justices*, 99 N.H. 536, 540, 114 A.2d 801, 804 (1955); *Opinion of the Justices*, 111 N.H. 210, 213, 279 A.2d 741, 742 (1971).