Merrimack
Nos. 78-081 and 78-137

ERNEST T. SMITH III

v.

THE STATE OF NEW HAMPSHIRE

JAMES R. ANDERSON

v.

THE STATE OF NEW HAMPSHIRE

November 15, 1978

*Upton, Sanders & Smith,* of Concord (*Ernest T. Smith III* orally), pro se, for the plaintiff Smith.

*Gilbert Upton,* of Concord, by brief, as amicus curiae.

*Carroll F. Jones,* of Concord, by brief, as amicus curiae.

*James R. Anderson,* of Pittsfield, by brief and orally, pro se.

*Thomas D. Rath,* attorney general, and *David W. Marshall,* attorney (*Mr. Marshall* orally), for the State.

Judicial Council of New Hampshire (*Brian D. Kenyon,* executive director), filed a memorandum.

GRIMES, J. These cases present the issue whether RSA 604-A:5 and Laws 1975, ch. 505, § 1.01(04)(05), which limit compensation to court-appointed attorneys, are unconstitutional. Plaintiffs in both cases are attorneys who challenge the system designed to compensate court-appointed counsel who represent indigent defendants.

RSA 604-A:4 provides in pertinent part:

> [C]ounsel appointed pursuant to this chapter to represent the defendant at the conclusion of the representation or of any segment thereof, shall be reasonably compensated therefor and shall be reimbursed for expenses reasonably incurred. . . . Each court before which the counsel represented the defendant shall fix the compensation and reimbursement to be paid the counsel. . . .

RSA 604-A:5 provides in part:

> For representation of a defendant in any criminal case in which one or more felonies are charged, the total compensation paid counsel shall not exceed five hundred dollars . . . . In cases where homicides are charged or the penalty exceeds twenty-five years and there are extraordinary circumstances, payment in excess of these limits may be made if the court finds that the nature of the case is such as to require intensive and protracted representation.

Laws 1975, ch. 505, § 1.01(04)(05) provides that, other provisions of the law notwithstanding, fees to reimburse attorneys for indigent defendants shall not exceed ten dollars per hour for case preparation and fifteen dollars per hour for time in court.

Plaintiff Smith was appointed by the Concord District Court to appear as counsel for Gary Farrow, an indigent charged with the crimes of armed robbery and murder in the first degree. After a

probable cause hearing and indictment, Smith was appointed by the Merrimack County Superior Court as counsel for Mr. Farrow relative to the charge of murder. Plaintiff Smith represented the defendant throughout his trial and submitted the following summary as a bill:

| | |
|---|---:|
| 247.3 (legal time) at $10 per hour | $ 2,473.00 |
| 198.9 (court time) at $15 per hour | 2,983.50 |
| 496.2 (overhead expenses) at $24.29 per hour | 10,838.20 |
| Miscellaneous specific out-of-court disbursements | 1,893.36 |
| Total Services and Disbursements | 18,188.06 |

The Court (*Johnson*, J.) signed a form certifying that payment to plaintiff was proper. This certification was forwarded to the office of comptroller for payment. The deputy comptroller directed an aide to return the bill and explain to Attorney Smith that no authority existed for payments of fees in excess of those established by Laws 1975, ch. 505. The aide stated that Smith's charge for overhead was inappropriate for payment. Smith filed a bill of complaint challenging this determination. Smith has been paid $7,349.86 for all except the overhead expenses listed in his bill.

Plaintiff Anderson was appointed by the Merrimack County Superior Court to represent three indigent defendants. None of the indigents were charged with homicides or other crimes where the penalty exceeds twenty-five years, so plaintiff Anderson's compensation was limited in each case to five hundred dollars under RSA 604-A:5. Plaintiff represented these indigent defendants through jury trials and submitted bills for these cases in amounts exceeding the statutory limit. The Court (*Johnson*, J.) during a post-trial conference in one of the cases stated: "Mr. Anderson provided, in the court's opinion excellent services on behalf of [the defendant] and that the bill as submitted indicates an extraordinary amount of work on the case, and further, that if the court had the authority to waive the statutory fee established by RSA 604-A:5, the court would indeed do so." Attorney Anderson contends that the maximum fee of five hundred dollars and the limitation of hourly rates to ten and fifteen dollars are unconstitutional. The Court (*Johnson*, J.) reserved and transferred all questions of law raised by both sets of pleadings to this court.

 Attorneys are, of course, obligated to represent indigent persons when appointed by the court. This obligation is based both upon ethical canons and court duty. *See, e.g.,* ABA Code of

Professional Responsibility EC 2-29. It is often stated that "a lawyer does not owe free representation to any and every indigent who chooses to demand it of him. His duty is owed to the court and it is the court's call that he is obliged to answer." *Brown v. Bd. of County Comm'rs*, 85 Nev. 149, 151, 451 P.2d 708, 709 (1969); *State v. Rush*, 46 N.J. 399, 410, 217 A.2d 441, 447 (1966). A refusal of the court's request would in most instances constitute contempt, *State v. Frankel*, 119 N.J. Super. 579, 293 A.2d 196 (1972), *cert. denied*, 409 U.S. 1125 (1973), and an unexcused failure to represent the indigent would certainly constitute conscious disregard of our Code of Professional Responsibility, and thus be grounds for disciplinary action by this court. *See generally In re Decato's Case*, 117 N.H. 885, 379 A.2d 825 (1977); *In re Mussman's Case*, 111 N.H. 402, 286 A.2d 614 (1971).

The legal profession has accepted for many years the burden of providing indigent persons with legal representation in criminal cases. In 1966, however, the people of New Hampshire decided that this burden should be borne by the State. Part I, article 15 of our constitution was amended in that year to provide that "[e]very person held to answer in any crime or offense punishable by deprivation of liberty shall have the right to counsel *at the expense of the state. . . .*" N.H. CONST., pt. I, art. 15 (emphasis added.) In explaining the amendment, Mr. Bittenbender of the constitutional convention's committee on the Bill of Rights stated that "[w]hile we are in grateful sympathy with the stronger support of the courts and the bar for their defense of our Bill of Rights, we of the committee are of the opinion that this is not something which should be depending on ethics or practice alone. . . ." N.H. Const. Convention Jour. 178 (1964). Another committee member, (now Governor) Meldrim Thomson, Jr., explained the provision as follows: "[A]ll we are saying is that a person is entitled to the right of counsel whether he be an indigent or not and if he is an indigent then he must show that he is and the cost of it must be provided by the State." *Id.* at 182.

It is long settled that this court is the final arbiter of State constitutional disputes. The interpretation of our constitution is a traditional function of the judiciary and "is not within the competence of the other two branches." *O'Neil v. Thomson*, 114 N.H. 155, 159, 316 A.2d 168, 170 (1974). In interpreting the 1966 amendment, we will give the words the same meaning that they must have had to the electorate on the date when the vote was cast. *Concrete, Inc. v. Rheaume Builders, Inc.*, 101 N.H. 59, 60, 132 A.2d 133, 135

(1957). Thus we first will inquire as to the plain meaning of the amendment.

■ Turning to the language of the constitutional amendment, we find the meaning to be clear. The amendment speaks of the "right to counsel at the expense of the state." N.H. CONST. pt. I, art. 15. That language plainly requires that the cost of services rendered by attorneys on behalf of indigent defendants be borne by the government of this State. In interpreting the amendment, we are assisted by the phrasing of RSA 604-A:4, which provides that court-appointed counsel "shall be reasonably compensated."

■■ In the absence of an agreed-upon price, what constitutes reasonable compensation for performed services is, and has historically been, a matter for judicial determination. *See, e.g., Beaudoin v. Zaccardo*, 117 N.H. 273, 371 A.2d 1174 (1977); *R. J. Berke & Co. v. J. P. Griffin, Inc.*, 116 N.H. 760, 367 A.2d 583 (1976); *Britton v. Turner*, 6 N.H. 481 (1834). Moreover, it is peculiarly within the judicial province to ascertain reasonable compensation when the person who performs the services is acting under court appointment as an officer of the court. We view it implicit in the constitutional scheme that the courts of this State have the exclusive authority to determine the reasonableness of compensation for court-appointed counsel. The statutes in question intrude upon this judicial function in violation of the constitutional separation of powers mandate. N.H. CONST. pt. I, art. 37; *cf., Opinion of the Justices*, 118 N.H. 582, 392 A.2d 125 (1978) (declaring the "Sunset" Law's proposed termination schedule inapplicable to State agencies created by executive order and necessary for the executive function).

■ The statutory compensation scheme embodied in RSA 604-A:5 and Laws 1975, ch. 505, § 1.01(04)(05) was established twelve years ago. Since that time, the $500 per case maximum and the compensation limits of $10 and $15 per hour have not changed. Yet, inflation alone has reduced the hourly rates to the equivalent of $5 and $7.50 an hour. *See generally* Monthly Labor Rev. at 81 (March 1978). There can be no question that by limiting an attorney's compensation to what is in reality $5 and $7.50 per hour, the State has transferred a major part of its own burden onto the shoulders of the New Hampshire bar. In our view, this is a far cry from the constitutional mandate of part I, article 15. We hold that RSA 604-A:5 and Laws 1975, ch. 505, § 1.01(04)(05) are unconstitutional insofar as they shift much of the State's obligation to the

legal profession and intrude impermissibly upon an exclusive judicial function.

We are convinced that the profession must be relieved of this burden and that the burden must pass to the citizens of New Hampshire, whose duty it has been since 1966. The members of the bar, being taxpayers, will of course share in it. We also believe, however, that the bar should continue to contribute something more. To accomplish the ends of this decision, court-appointed attorneys should be paid a reasonable fee, but one somewhat less than that which an ordinary fee-paying client would pay.

It remains to be determined just what "reasonable compensation" means and who is to decide the matter in this and future cases. The obligations and responsibilities of the bar are matters of judicial concern alone. *See Schware v. Bd. of Bar Examiners*, 353 U.S. 232, 248 (1957) (Frankfurter, J. concurring); N.H. Judicial Council, 5th Report 20–21 (1954); *State v. Rush*, 46 N.J. 399, 411, 217 A.2d 441, 447 (1966); *In re Lacey*, 11 Cal. 2d 699, 701, 81 P.2d 935, 936 (1938). Since the obligation to represent indigent defendants is an obligation springing from judicial authority, so too is the determination of reasonable compensation for court-appointed attorneys a matter for judicial determination. The power to regulate officers of the court is a power inherent in the judicial branch. Implicit in that power is the authority to fix reasonable compensation rates for court-appointed attorneys. The legislature recognized this authority in enacting RSA 604-A:4, which provides that "[e]ach court before which the counsel represented the defendant shall fix the compensation and reimbursement to be paid the counsel." Thus, we hold that it is for the trial courts of New Hampshire to fix the amount of compensation due in each case hereinafter provided. The rate awarded by the court should neither unjustly enrich nor, as the present fee schedule does, unduly impoverish the court-appointed attorney.

With the exception of the instant cases, this decision will not be given retroactive effect, for prior appropriations of the legislature were undoubtedly based upon the presumed constitutionality of the statutory fee schedules. *See Merrill v. Manchester*, 114 N.H. 722, 332 A.2d 378 (1974). Effective assistance of counsel, however, is a right fundamental to criminal defendants, and is a principle deeply ingrained in the criminal justice system, and is required by both the Federal and State Constitutions. *Argersinger v. Hamlin*, 407

U.S. 25 (1972); *Gideon v. Wainwright*, 372 U.S. 335 (1963). Without proper court control of court-appointed counsel, and indeed without adequate compensation for those attorneys, it might be impossible to obtain valid criminal convictions in future prosecutions of indigent defendants. In addition, if public funding is not forthcoming, the ethical duties of the bar to represent indigent defendants may have to be reevaluated by this court. In the future, adequate appropriations will have to be made in order to comply with this ruling and to ensure the continued functioning of the criminal justice system. The legislature is, of course, free to adopt an alternative method for funding the defense of indigent defendants. The courts, however, must determine the reasonable compensation for court-appointed attorneys.

Within sixty days after the date of this opinion the district, municipal, and superior courts are requested to recommend to us for our approval suggested reasonable schedules for counsel fees in indigent criminal cases. *See* RSA 490:4.

The matters are remanded to the trial court for determination of fees in accordance with the new schedule after it is adopted by the court.

*Remanded.*

All concurred.