815 So.2d 115 (2002)
STATE of Louisiana
In the Interest of A.P.
No. 2000 CA 2712.
Court of Appeal of Louisiana, First Circuit.
February 15, 2002.
Rehearing Denied May 9, 2002.
*116 Sherry P. Crain, Baton Rouge, for Appellant, State of Louisiana, Department of Social Services.
Cynthia G. Eyre, Slaughter, Pro Se Appellee.
Before: CARTER, C.J, PARRO, and CLAIBORNE,[1] JJ.
CARTER, C.J.
The juvenile court appointed an attorney, Cynthia G. Eyre, to represent a child alleged to be in need of care. Eyre was led to believe she would be paid by the State of Louisiana, Department of Social Services (DSS). The court subsequently appointed another attorney, Michael S. Walsh, to represent the child's father. Walsh and Eyre both submitted requests for payment to DSS, but Walsh's request was filed first. DSS denied Eyre's request, contending that payment to an attorney representing a parent precludes payment to an attorney representing the child. The sole issue before this court is whether DSS can invoke LSA-R.S. 46:460.21 A(1) to deny payment to Eyre.

LEGAL AND FACTUAL BACKGROUND
When the state files a petition alleging a child is in need of care, the court is required to appoint counsel for the child and for the child's parents if they are financially unable to afford counsel. The court must either appoint independent counsel or refer the child or parents for representation by the indigent defender board (IDB). LSA-Ch.C. arts. 607A & 608. DSS is required to "pay legal fees and approved *117 expenses arising out of the representation of children or indigent parents, but not both, ... in child protection proceedings." LSA-R.S. 46:460.21 A(1).
In the normal course of events in East Baton Rouge Parish, according to the pleadings and the brief of DSS, the IDB represents the child. Independent counsel is then appointed to represent the parents. When the parents have conflicting interests, it is necessary to appoint an attorney for each parent.
This case involved a child, AP, born to minors who themselves had been adjudged in need of care. When these proceedings were initiated, AP's 13-year-old mother, NP, was already represented by the IDB. Thus, the IDB continued to represent her in this proceeding, and the trial court appointed independent counsel to represent AP and the child's father, AA. According to the court minutes, Eyre was appointed to represent AP on February 14, 1997, although the order appointing her was not filed until December 14, 1998. The minutes reflect that the trial court appointed Walsh to represent AA on February 19, 1998, but the court did not sign the order appointing him until November 6, 1998.
Walsh submitted a request for payment of fees on October 20, 1998. The court approved those fees on November 7, 1998, and DSS paid them. Walsh continued to represent AA, appearing at court hearings on February 26, 1999, June 3, 1999, February 3, 2000, and June 22, 2000, but he did not request any additional fees.
Eyre submitted a fee request for $575.00, which was approved by the trial court on December 14, 1998 (the same day she was formally appointed). On March 10, 2000, the trial court approved Eyre's fee request for $1,018.75, which included the $575.00 previously approved. On August 1, 2000, Eyre submitted a request for payment totaling $1,206.25, which included the sums previously approved. "Judge will sign after hearing" is written on the order, but no signed copy exists in the record.
DSS refused to pay Eyre's attorney's fees, relying on LSA-R.S. 46:460.21 A(1). DSS contends that its obligation to pay attorneys in this case ended when it paid Walsh for representing AA, citing the language in LSA-R.S. 46:460.21 A(1) that it will "pay legal fees and approved expenses arising out of the representation of children or indigent parents, but not both." (Emphasis added.) Eyre filed a motion to compel payment of attorney's fees, requesting fees of $1,206.25 and "all fees which may arise in this case until such time as the matter is closed, and costs and expenses incurred in the prosecution of this motion."
After a hearing on the motion, the trial court ordered DSS to pay "attorney's fees in the amount of $1,781.25 and reasonable attorney's fees" to Eyre. DSS appeals, contending that the clear language of Revised Statute 46:460.21 A(1) results in Eyre's representation being provided pro bono.

ANALYSIS
"When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." LSA-C.C. art. 9. It is true that LSA-R.S. 46:460.21 A(1) states DSS will pay the fees of indigent parents or children, but not both. Application of the law as written, however, will lead to an absurd consequence in this casean attorney who was appointed with the understanding that her expenses and fees would be paid would not be paid because she represents the child and not the other *118 parent. If the IDB had represented AP and Eyre had been appointed to represent NP, DSS would have been obligated to pay both Eyre and Walsh, because the statute refers to representation of "parents." Since the two appointed attorneys in this case represented the child and one of the parents, however, the child's attorney would not be paid under the literal language of the statute.
DSS does not suggest the purpose of the "but not both" language in the statute, but the overriding reason we can envision is that DSS was trying to limit expenditures for legal representation of indigents to a maximum of two attorneys per case. This purpose would not be served by refusing to pay Eyre.
When Eyre was appointed, she had no reason to believe she would be working pro bono. DSS argues in brief that "counsel... had notice of [DSS's] limitation on payment from the date of appointment" because the orders appointing Eyre and Walsh reference LSA-R.S. 46:460.21 and contain standard language that only one "subset of attorney(s) should be appointed using this form to receive compensation" from DSS. Eyre, however, had been representing AP for twenty months before the trial court signed the order formally appointing her.
Uncompensated representation of indigents, when reasonably imposed, is a professional obligation burdening the privilege of practicing law in this state and does not violate the constitutional rights of attorneys. State v. Wigley, 624 So.2d 425, 426 (La.1993). The burden becomes unreasonable, however, when it becomes oppressive and is not fairly shared among the members of the bar. State v. Clifton, 247 La. 495, 172 So.2d 657, 667 (1965). In Wigley, the Louisiana Supreme Court held that assignment of counsel to represent an indigent must provide at least for reimbursement of properly incurred and reasonable out-of-pocket expenses and overhead costs, and that if the judge determines no funds are available to reimburse appointed counsel, members of the private bar should not be appointed to represent indigents. Wigley, 624 So.2d at 429.
The courts carefully scrutinize procedures used to terminate a parent-child relationship, and failure to appoint counsel for the child or parents may result in the proceeding being fundamentally unfair. See State ex rel. Johnson, 475 So.2d 340, 342 (La.1985). But under DSS's interpretation of LSA-R.S. 46:460.21 A(1), the court would be unable to pay even the expenses of a member of the private bar appointed to represent either the parent or the child when the IDB was already representing one of the parents. Such a scenario would raise the possibility of one party being unrepresented, since Wigley states members of the private bar should not be appointed in that circumstance. Surely such a harsh result in matters involving fundamental rights is not what the legislature intended when it enacted LSA-R.S. 46:460.21 A(1).
Louisiana courts have the inherent constitutional authority to order the state, its appropriate subdivision, department, or agency to provide for payment of counsel fees and necessary expenses when necessary for effective representation of indigents. The legislative and executive branches can aid this inherent judicial power, but their acts or failure to act cannot destroy, frustrate, or impede that constitutional authority. State ex rel. Johnson, 475 So.2d at 342. Failure to appoint counsel for the child in this case would have rendered the proceedings fundamentally unfair. The trial court in this case was simply exercising its constitutional *119 authority to ensure fair proceedings when it ordered DSS to pay Eyre, the child's counsel. It seems particularly fair for DSS to pay these fees when it was the party who brought the action that necessitated the appointment and compensation of an attorney for the child. See State ex rel. Johnson, 475 So.2d at 343.
For these reasons, we find the trial court did not err in ordering DSS to pay Eyre's legal fees. We note, however, that the amount the trial court awarded, $1,781.25, does not comport with the amount of attorney's fees either requested by Eyre or approved by the court. It appears the trial court added the first and last requests together, even though the $575.00 first request was included in the final cumulative request. Furthermore, the trial court never approved the last request for a total of $1,206.75. We must reduce the amount of attorney fees awarded to the sum approved by the trial court, $1,018.75.
Eyre prayed for "costs and expenses incurred in the prosecution of this motion." Instead, the trial court awarded Eyre "reasonable attorney fees." A court cannot award attorney's fees absent statutory authority or agreement. In re Tutorship of Blanque, 97-0249, p. 5 (La.App. 5th Cir.9/30/97), 700 So.2d 1077, 1082, writ denied, 97-2744 (La.1/16/98), 706 So.2d 979. There is no statutory or contractual authority for awarding attorney's fees on a motion to compel payment of costs. The trial court erred in making that award.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is amended to reduce the amount of attorney fees awarded to $1,018.75 and to delete the award of "reasonable attorney fees." As amended, the judgment is affirmed. DSS is cast for appeal costs of $288.54.
AMENDED, AND, AS AMENDED, AFFIRMED.
PARRO, J., concurs in part and dissents in part, with reasons.
PARRO, J., concurring in part and dissenting in part.
I agree with that portion of the majority opinion that amends the attorney fee award to the amount actually owed, according to the record. Clearly, if such an award is to be made, it should be in the correct amount.
Although I agree with the statement in State ex rel. Johnson, 475 So.2d 340, 342 (La.1985), that the court has inherent constitutional authority to order the state to pay counsel fees and expenses when necessary for the effective representation of indigents, that case involved a situation in which no statutory authority existed for the award of those fees. Here, there is a statute that authorizes payment, but arguably impedes this court's authority by the qualifying phrase allowing payment of either the indigent parents or children, "but not both." LSA-R.S. 46:460.21(A)(1). However, until someone challenges the constitutionality of the statute and it is declared unconstitutional, this court, as well as the juvenile court, is required to follow its clear and unambiguous language. This court cannot simply ignore a clear statutory mandate that may be unpopular or, in rare instances, even harsh in its application.
Accordingly, I respectfully dissent in part.
NOTES
[1] Hon. Ian W. Claiborne, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.